No. 36,242

THE RUSSELL STATE BANK OF RUSSELL, *Plaintiff*, v. J. D. STEINLE, *Defendant;* THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RUSSELL, *Intervenor.*

(153 P. 2d 906)

Opinion filed December 9, 1944.

*C. R. Holland,* of Russell, argued the cause, and *George W. Holland, Herbert N. Holland, J. C. Ruppenthal, Oscar Ostrum, O. G. Rouse* and *Charles Boyle,* all of Russell, were on the briefs for the plaintiff.

*Glenn V. Banker,* of Russell, argued the cause for defendant J. D. Steinle.

*Harold W. McCombs,* of Russell, argued the cause for the intervenor.

The opinion of the court was delivered by

WEDELL, J.: This is an original proceeding in mandamus whereby plaintiff, the holder of a judgment obtained in the county court of Russell county, seeks a writ commanding the defendant, J. D. Steinle, judge of that court, to issue and deliver to the sheriff of that county an execution for collection of his judgment.

The board of county commissioners of Russell county intervened in the action and will be designated as the board.

Plaintiff's motion for the writ, in substance, alleges:

In January, 1937, the board adopted the provisions of an act of the legislature relating to the establishment of county courts and created a county court in Russell county pursuant to such legislative authority; J. D. Steinle became the judge thereof and is now such judge; on October 9, 1940, the county court rendered a judgment in favor of the then Russell-Farmers State Bank and against one Wm. Steinle in the sum of $362.26 together with interest and costs; the charter of plaintiff was amended in 1942 and its corporate name now is "The Russell State Bank, Russell, Kansas"; the judgment obtained by plaintiff has not been paid; on June 19, 1944, plaintiff filed a praecipe for execution, but the defendant refused to issue the same; if such execution is not issued the judgment will become dormant; plaintiff has no other adequate remedy at law by which to have its judgment satisfied.

The prayer is that this court issue a writ to the defendant commanding him to issue and deliver the execution to the sheriff of Russell county and that plaintiff recover his damages and costs.

Defendant's answer admits the allegations contained in the motion for the writ and sets forth the resolution of the board of county commissioners adopted December 7, 1943, which was served upon him and whereby the board rescinded its former action adopting the provisions of the county-court act. The resolution also directed defendant to transcribe to the district court of Russell county all actions, if any, pending in the county court and all judgments unsatisfied according to the records of the county court.

The answer in substance further alleges:

That in view of the circumstances the defendant is in doubt with respect to the following matters: (a) Whether a county court continues to exist in Russell county; (b) whether he continues to be judge of the county court; (c) who is the proper official or person to cause process to issue in connection with numerous cases, judgments and pleadings on file in the county court; and (d) what is the proper repository for dockets, files and records of said court and who is the legal and responsible custodian of such dockets, files and records.

The answer, in substance, further alleges:

That since January 1, 1944, the board has failed and refused to

allow any compensation to defendant for services as judge of the county court and continues to refuse to allow claims filed for his monthly services; that by reason of the acts of the board he refused to issue the execution.

The prayer of the defendant is for a determination of his duties and powers and his right to compensation as county judge since January 1, 1944.

Plaintiff's reply admits the board passed the rescinding resolution and had it served on the defendant. The reply, in substance, further alleges:

The board had no right, power or authority to abolish the county court or to direct defendant how to dispose of the business of that court; the rescinding resolution was *ultra vires*, null and void and contrary to public policy; if the board actually had such general authority, which plaintiff denies, it had no legal right or authority to abolish that court in December, 1943, during the term of office for which defendant was elected and which did not expire until January, 1945; the act of the board was arbitrary and without notice to the public, attorneys, this plaintiff and other persons having obtained judgments in said court which remained unsatisfied and that interested parties were thus deprived of an opportunity to protect their rights and interests.

The board has intervened and in its answer admits the material averments of the petition and that on December 7, 1943, it rescinded the original resolution adopting a county court for Russell county. Its answer sets forth the volume of business transacted by the court since its creation and the fees paid by that court to the county in the years 1942 and 1943. It further alleges: Its investigation disclosed there was no necessity for such a court and that its maintenance imposed an unnecessary burden upon the taxpayers of the county; that it directed defendant to transcribe to the district court of Russell county all actions, if any, then pending and undetermined and all judgments remaining unsatisfied as shown by the records of the county court.

Plaintiff's reply to the answer of the board denies that all the allegations touching the court's volume of business are correct and further alleges that such averments, if correct, constitute no defense to the petition for the writ.

The reply further, in substance, alleges:

The board was given no power or authority by the legislature to

abolish the court and its resolution attempting to do so was void; the board had no authority to abolish the court during defendant's term of office; the action of the board was arbitrary in the respects stated in plaintiff's reply to defendant's answer.

The fundamental question is whether the board was vested with power and authority to abolish the county court. The board, in substance, contends: (1) Article 2, section 21, of our state constitution authorizes the legislature to confer upon county commissioners legislative power to create the court; (2) the legislature conferred such legislative power; (3) the power conferred to create the court includes by implication the power to abolish it.

The contentions will be treated in the order stated. The constitutional provision relied upon reads:

"The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient." (Art. 2, § 21.)

It will be observed the powers of the legislature which may be conferred upon county tribunals are only powers ". . . of *local* legislation and administration. . . ." (Emphasis supplied.) We have held that under this constitutional provision only such local legislative and administrative powers as pertain to the transaction of *county business* can be conferred. (*City of Emporia v. Smith,* 42 Kan. 433, 435, 22 Pac. 616; *State, ex rel., v. Hardwick,* 144 Kan. 3, 6, 57 P. 2d 1231.) Manifestly the county court was not created for the purpose of transacting the business affairs of Russell county or any other county. The court is a judicial tribunal vested with powers and jurisdiction prescribed by law. Its power and jurisdiction is in no sense restricted to the transaction of county business. (G. S. 1935, 20-808; 20-809; 20-810.) See, also, provision for issuing executions to district courts of other counties. (G. S. 1935, 20-815.) The mere fact this particular court was located within the physical boundaries of Russell county did not make it a tribunal for transacting the business affairs of Russell county any more than the police court, the justice of the peace courts or the district court of Russell county are tribunals created for the transaction of the county's business. The constitutional provision relied upon does not authorize the legislature to confer upon county commissioners legislative power to create the court. The pertinent portion of our constitutional provision reads:

"The judicial power of this state shall be vested in a supreme court, district

courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law. . . ." (Art. 3, § 1.)

The only source of power under our constitution to provide additional courts is in the legislature. (Art. 3, § 1.) (*Brown v. Arkansas City,* 135 Kan. 453, 455, 11 P. 2d 607.)

What about the board's second contention? Since the legislature could not confer legislative power upon the board to create the court the legislature, of course, did not legally do so. But does the act indicate the legislature intended to confer such legislative power? The answer must be found in the act. The pertinent part of G. S. 1935, 20-802, provides:

"*There is hereby established* in such counties as may adopt the provisions of this act a county court. . . ." (Emphasis supplied.)

G. S. 1935, 20-801, reads:

"The provisions of this act shall apply only to such counties in this state as shall by resolution of their respective boards of commissioners duly adopt the same. Said resolution may be substantially as follows: '*Resolved,* That this county adopt the provisions of the act of the legislature of 1923, entitled "An act establishing county courts in such counties as may adopt the provisions of this act, *prescribing the jurisdiction, providing officers and their compensation and regulating the practice and procedure in such courts."* ' From and after the adoption of such resolution the following provisions of law, shall, as to such counties, govern the establishment, jurisdiction and procedure of such courts: *Provided,* That the provisions of this act shall not be construed to apply in any county in which there is now a city court." (Emphasis supplied.)

An examination of the above statutes clearly discloses the new judicial tribunal, the county court, was not created by any single board of county commissioners but by an act of the state legislature in conformity with our constitutional provision relating to the creation of other courts. (Art. 3, § 1.) The legislature said: "There is hereby established . . . a county court . . . ." (G. S. 1935, 20-802.) The legislature prescribed the jurisdiction of the court it created. The legislature designated its officers and provided for their compensation. The legislature regulated the practice and the procedure in such courts. (G. S. 1935, 20-801 *et seq.*) In other words the legislature created the court and made it available to every county in the state in which there is no city court. The court which the legislature created became an established tribunal within such county upon the adoption of the statutory resolution. The legislature therefore left nothing for any board of county commissioners to do with respect to the establishment of a

county court in any county except to determine whether it wanted the newly created court. If it did it was merely required to adopt the provisions of the act which created the court.

We have held the mere right of a city to determine and make a finding of a need for the establishment of a city court does not constitute the exercise of· legislative power, although made in the form of an ordinance, but constitutes the right to make a finding of fact. In the same case we held such authority granted by statute to the city was not a delegation of legislative power. (*Brown v. Arkansas City,* supra.)

What about the board's third contention? No legislative power having been delegated to the board to create the court manifestly the board had no power by implication to abolish the court. Let us however pursue a step further the board's contention that legislative power was conferred upon it. Assuming for the moment legislative power could have been and was conferred upon the board, what was the extent thereof? It was solely to adopt the provisions of "An act establishing county courts. . . ." The law is entirely silent with respect to any right of the board to abolish the court. We must therefore assume the legislature did not intend to grant such power and that the legislature intended to reserve that power unto itself. This it clearly had the right to do.

Municipal corporations are creations of law and can exercise only powers conferred by law and take none by implication. (*State, ex rel., v. City of Coffeyville,* 127 Kan. 663, 274 Pac. 258; *Brown v. Arkansas City,* supra; *State, ex rel., v. Sedgwick County Comm'rs,* 150 Kan. 143, 146, 91 P. 2d 2, and cases therein cited.) The only powers municipalities ever acquire in addition to those expressly granted are powers necessary to make effective the powers expressly granted. Applying that doctrine to the instant case the only implied power the board could have, if any, would be the power to make its adopting resolution effective. It did not have express or implied power to abolish the court.

The provisions of the several state constitutions determine the power of the legislature to affect the existence or jurisdiction of municipal or police courts. Municipalities have only such power with respect to the establishment or disestablishment of municipal or police courts as is conferred upon them by constitutional provision or delegated to them by statute. (21 C. J. S. Courts, § 131 [a] and [b].)

The delegation of all power to determine facts which bring a court into being does not embrace the power to abolish a court thus created, unless there is also a delegation of power to determine facts upon which its disestablishment may be based. (21 C. J. S. Courts § 131 [b].) No such delegation of power to disestablish the county court is embraced in the instant act. It follows the rescinding resolution of the board was without authority and a nullity. The result is the resolution adopting the county court act stands and defendant, as the judge of that court, was at all times and is now vested with full authority and power to issue the requested execution.

Plaintiff and defendant seek to recover from the board expenses incurred by reason of the original proceeding in this court and costs including attorneys' fees. While the county attorney representing the board at first appears to have been of the opinion the board could not abolish the court he later concluded it could do so. It also appears the board believed that since the county court was not financially self-supporting it could be abolished. The county court was not made available to counties on the theory it would be financially self-supporting but in the belief it would constitute an improvement in our judicial system. While the board was mistaken in its views and the county attorney erred in his second conclusion we cannot say upon the basis of the facts before us in this proceeding that the action of the board was necessarily arbitrary or in bad faith. Moreover, this is not an action for damages but a proceeding in mandamus. Under the circumstances we shall not penalize the board with attorneys' fees in this proceeding (*Day v. Cowley County Comm'rs*, 146 Kan. 492, 499, 71 P. 2d 871), or with expenses incurred by reason of the fact the proceeding was filed originally in this court.

Defendant also asks this court to determine the question of the county's liability for his compensation since January 1, 1944. The statute does not appear to authorize the granting of a money judgment in favor of a defendant in a mandamus proceeding. (G. S. 1935, 60-1710.) Moreover if we could determine the question of the county's liability in the instant proceeding we do not have before us the necessary facts to do so.

The writ will be allowed and the costs incurred in this court will be taxed against intervenor, the board. It is so ordered.