No. 36,955

THE STATE OF KANSAS, ex rel., George W. Donaldson, County Attorney of Neosho County, *Plaintiff,* v. ETHEL HINES, County Superintendent of Public Instruction, and L. W. BROOKS, State Superintendent of Public Instruction, etc., *Defendants.*

(182 P. 2d 865)

Opinion filed June 27, 1947.

*George W. Donaldson,* county attorney, argued the cause and was on the briefs for the plaintiff.

*Harold R. Fatzer,* assistant attorney general, argued the cause, and *Edward F. Arn,* attorney general, was with him on the briefs for the defendants.

*Clarence J. Malone,* of Topeka, *E. E. Kite,* of St. Francis, and *Marc. C. Boss,* of Columbus, as *amici curiae.*

The opinion of the court was delivered by

BURCH, J.: This action, in the nature of quo warranto, was brought to test the validity of the so-called school reorganization laws. Both the original act of 1945, which is chapter 291 of the laws of that year (G. S. 1945 Supp., 72-5601 to 72-5623, inclusive), and the amendatory act, House bill No. 376 (see Laws 1947, chapter 374), are challenged. The plaintiff asserts that the involved statutes are unconstitutional for seven reasons. The defendants, of course, vigorously contend to the contrary.

Before giving consideration to the specific questions presented, some general observations should be made. The court is cognizant of the complicated consequences which rest upon the result of the litigation. The court realizes that probably nothing is more essential to the welfare of the state than the continued maintenance of adequate schools in the communities throughout its counties. The court is comprehensive of the complex problems which have confronted the legislature in its efforts to enact satisfactory legislation controlling the controversial questions which arise upon consideration of school reorganizations. As a consequence this case presents an instance wherein the rule relative to the duty of a court to hold that statutes are valid, whenever it is reasonably possible to do so, has profound significance. The court is aware, also, of the thought often expressed to the effect that the constitution must be given flexibility so that it may vibrate in tune with the vicissitudes of time. The court, likewise, is contemporaneously conscious of the admonition that the flexibility theory of constitutional construction should not be followed to the point of regarding the dominant document as being merely worthy of mention. The constitution still stands, not only as the supreme expression of powers granted by the people to their government, but it stands today and should stand tomorrow, staunch and rigid in its restraints upon governmental powers in our system of democracy. With such general concepts in mind, the court has given extended consideration to the statutes which are herein subjected to constitutional tests.

The first contention of the plaintiff is that the powers conferred upon the school reorganization committees in the respective counties

by the act of 1945 amounts to a delegation of legislative power in violation of the provisions of section 1 of article 2 and section 21 of article 2 of the constitution of the state of Kansas. Section 1 of article 2 reads:

"The legislative power of this state shall be vested in a house of representatives and a senate."

· Section 21 of the same article reads:

"The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient."

The plaintiff asserts that the establishment or alteration of school districts is a legislative function; that the establishment or alteration of school districts cannot properly be classified as "county business" or "local legislation" and that, therefore, the legislative powers cannot properly be delegated to "tribunals transacting the county business" or any other tribunals.

1. Obviously, the first question which must be answered is whether the creation of school districts or the alteration of their boundaries is a legislative function. Beginning with *State, ex rel., v. Comm'rs of Ford County,* 12 Kan. 441, this court has held repeatedly that the legislature has "absolute power over the organization . . . school-districts . . ." See, also, *School District v. Board of Education,* 16 Kan. 536, 540; *School District v. Board of Education,* 110 Kan. 613, 620, 204 Pac. 758; *State, ex rel., v. Mowry,* 119 Kan. 74, 78, 237 Pac. 1032; *State, ex rel., v. School District,* 140 Kan. 171, 34 P. 2d 102; and *State, ex rel., v. Storey,* 144 Kan. 311, 58 P. 2d 1090, from which the following is quoted:

"We agree with appellee that the questions considered by the state superintendent of public instruction, as shown by his testimony, pertain to the prudence or advisability of establishing the joint rural high-school district, with its proposed boundaries, *were legislative in character* . . ." (Emphasis supplied.) (p. 317.)

The court is of the opinion that consistency commands us to hold that the principal purpose of the act, which was to accomplish the reorganization of schools throughout the state, was legislative in character.

2. The next question which must be considered is whether the legislative power can be delegated to the tribunals named in the statute. If the powers sought to be delegated are legislative in character, as distinguished from administrative, ordinarily they

cannot be delegated unless their delegation is authorized by some express provision of the constitution or the authorization arises by reason of clear implication therefrom. Such a result follows from the doctrine of separation of the powers of government. The functions of the legislature must be exercised by it alone and cannot be delegated unless there is constitutional sanction therefor. The opinion in the case of *State, ex rel., v. School District,* 140 Kan. 171, 34 P. 2d 102, reads as follows:

"An attempt to confer such power is said to be an attempt to delegate legislative power, which is futile. This is settled by a long line of decisions, beginning with *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416, and extending to *Barrett v. City of Osawatomie,* 131 Kan. 50, 289 Pac. 970." (p. 175.)

See, also, *Oakland State Bank v. Bolin,* 141 Kan. 126, 40 P. 2d 437, and *State, ex rel., v. Storey,* supra, and cases therein cited. The last expression upon the subject by this court will be found in *State, ex rel., v. Jackson County Board of Social Welfare,* 161 Kan. 672, 171 P. 2d 651. From page 680 of the opinion the following is quoted:

". . . Legislative power is vested exclusively in the state legislature except that it is provided in section 21, article 2 of the constitution, that 'The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient.' No such delegation of legislative power to a state board or agency is provided for in the constitution; and it is well established law that in the absence of such provision, legislative power cannot be delegated."

Comprehension of the necessity for constitutional confirmation of the power essential to the delegation of legislative functions forces us to search for the fundamental elements which may give validity and life to the legislation under consideration. Section 3 of chapter 229 of the Laws of 1945 (now G. S. 1945 Supp. 72-5603) provides that "There is hereby created in each county of the state a school reorganization committee." The question develops at once, is there any constitutional provision authorizing the formation of a school reorganization committee in each county of the state to which can be delegated legislative power? The constitution contains no express provision to such effect. Section 1 of article 6 of the constitution reads:

"The state superintendent of public instruction shall have the general supervision of the common-school funds and educational interests of the state, and perform such other duties as may be prescribed by law. A superintendent of

public instruction shall be elected in each county, whose term of office shall be two years, and whose duties and compensation shall be prescribed by law."

In construing the above-quoted section of the constitution this court has held that the legislature can confer legislative power upon the state superintendent of public instruction because the constitution "specifically authorized him to 'perform such other duties as may be prescribed by law,' without limiting those duties to such as might be classified as executive or administrative only." (See *State, ex rel., v. Storey,* supra.) In the case of *School District v. Community High School,* 146 Kan. 380, 69 P. 2d 1102, this court called attention to the fact that "The county superintendent of schools is a constitutional official" and the validity of G. S. 1935, 72-2505, was upheld although the result reached therein was predicated upon the designated official having been given administrative or ministerial duties, rather than legislative authority, under the standards and guide rules provided in the statute. But we have no provision in the constitution which refers in any manner to any committee or tribunal having duties similar to those of a school reorganization committee being created in each county of the state. Consequently, there is no constitutional basis for application of the theory followed in *State, ex rel., v. Storey,* supra, and which might possibly have been followed in *School District v. Community High School,* supra, if it had been necessary.

Article 6 of the constitution pertains to "Education," and its second section reads:

"The *legislature* shall encourage the promotion of intellectual, moral, scientific and agricultural improvement, *by establishing a uniform system of common schools,* and schools of a higher grade, embracing normal, preparatory, collegiate and university departments." (Emphasis supplied.)

The rule is old that in expounding the constitution every word must be given due force and appropriate meaning. (See *Holmes v. Jennison,* 14 Pet. 540, 570, 571, 10 L. Ed. 579, 594; *Myers v. United States,* 272 U. S. 52, 151, 71 L. Ed. 160, 180, 47 S. Ct. 21, and *Williams v. United States,* 289 U. S. 553, 77 L. Ed. 1372.) The word "establish" has been defined as signifying "the putting or fixing on a firm basis . . . in a settled or efficient state or condition . . . ." (See *Armstrong v. George,* 84 Kan. 248, 251, 114 Pac. 209; *State, ex rel., v. Board of Education,* 111 Kan. 598, 600, 207 Pac. 764, and *Thummel v. State Highway Comm.,* 160 Kan. 532, 547, 164 P. 2d 72.) Thus, it may be fairly said that the men who framed

the constitution intended that those who should establish a uniform system of common schools would do so upon a firm, efficient basis. Even though we disregard such elements and conclude that the word "establish" may be construed as synonymous with "create," the result still requires us to inquire: Upon whom was the responsibility placed to establish a uniform system of common schools? The answer is as evident as light. The constitution says the legislature shall establish a uniform system of common schools. The constitution does not say that the legislature can delegate the power to establish schools to any corporate or quasi-corporate body it may create. In such circumstances, as was said long ago by Mr. Chief Justice Marshall in *American Ins. Co. v. 356 Bales of Cotton,* 1 Pet. 511, 7 L. Ed. 242, "they are incapable of receiving it." Mr. Justice Sutherland emphasized the rule in *Williams v. United States,* supra, from which the following is quoted:

". . . it cannot be reconciled with the limitation fundamentally implicit in the constitutional separation of the powers, namely, that a power definitely assigned by the *Constitution* to one department can neither be surrendered nor delegated by that department, nor vested by *statute* in another department or agency." (p. 580.)

The school reorganization committee which the statute under consideration seeks to establish is unquestionably an "agency" never contemplated by the men who molded the constitution. Consequently, it cannot be correctly asserted that any implication arises from the constitution to the effect that an unnamed and unborn agency should be vested with legislative power. Surely, such a result must follow from realization of the fact that the constitution explicitly and specifically placed the power to establish a uniform system of common schools in the legislature and nowhere else. In instances wherein the constitution is silent upon the subject of legislation, a different question may arise, but the constitution is not silent on the subject of the establishment of schools. As hereinbefore set forth, under the rule that all provisions of the constitution should be given equal recognition, this court has held that the state superintendent of public instruction may be delegated legislative power, but the liberal construction of the constitution followed in reaching such a result cannot be extended to the point of holding that the constitution sanctions the delegation of legislative power to an agency or committee not in contemplation at the time the constitution was created. We can find nothing in section 2 of article 6

which forms a basis for holding that the legislature can vest in a school reorganization committee the power to legislate upon questions concerning the establishment of a uniform system of common schools. If constitutional power exists for such a purpose, it must be found in some other section of the constitution. Examination of the remaining sections of article 6 of the constitution reveals that no other section of the article has any possible application to the problem here presented.. Therefore, we must leave article 6, which pertains to "Education," and seek to find constitutional guidance in some other article.

3. The only other section of the constitution which appears to have any application to the problem under present consideration is section 21 of article 2. The section has been quoted hereinbefore but its brevity permits repetition for the purpose of clarity. It reads:

"The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient."

Under the authority granted by the above provision this court has held that legislative powers may be conferred upon county commissioners and upon other local agencies provided they are transacting the county business. But the court has consistently, cautiously confined the approved delegation of such legislative powers to powers pertaining to the county business and to matters of local legislation and administration. (See *City of Emporia v. Smith,* 42 Kan. 433, 22 Pac. 616; *State, ex rel., v. Hardwick,* 144 Kan. 3, 57 P. 2d 1231; and *Russell State Bank v. Steinle,* 159 Kan. 293, 153 P. 2d 906.) In *State, ex rel., v. Hardwick,* supra, the court held:

"Insofar as a county tribunal is concerned, the legislature is limited; it can confer only power of local legislation." (p. 6.)

The cited case held that a statute pertaining to the prevention of soil erosion was invalid because it conferred upon a county tribunal the power to legislate on a matter which was not a subject of local legislation. We quote further from the opinion a statement which is germane to the present question:

"The statute requires the board to prescribe rules which must be complied with, a clear delegation of legislative power, and of power to legislate on a matter which is not local and is forbidden by the constitution. In our judgment, the evil to be eradicated and the injury to be remedied come not from any local situation nor from any county situation, but from one that is almost state-wide and that cannot by any fiat of the legislature be limited in its

scope. The attempted delegation of power to legislate violates the provisions of our constitution. [Art. 2, sec. 21]" (p. 8.)

In furtherance of the desire to uphold the constitutionality of the statutes under consideration, can it be held that the power to create and reorganize school districts over all the state involves only an exercise of local legislation? The title to the act reads: "An Act relating to schools, creating a division of school reorganization within the state department of education and a county reorganization committee in each county, prescribing powers and duties . . ." (Laws 1945, ch. 291.) It is evident from the title that the legislature was not attempting to pass legislation which was local in its nature. The situation which it sought to remedy arose from conditions existing over all the state and it is apparent that the legislature, in recognition of constitutional admonitions, was attempting to pass legislation providing for the establishment of a uniform system of common schools which was a general law and should have uniform operation throughout the entire state in compliance with section 17 of article 2 and section 2 of article 6 of the constitution. Moreover, examination of the pertinent provisions of the act reveals that the activities of the county reorganization committees are not confined strictly to reorganization of school districts within the counties. Subsection (2) of section 72-5607 of the act (G. S. 1945 Supp.) provides that in cases of school districts containing land lying in two or more counties, the reorganization committees of the counties involved shall meet in joint sessions and consider the various questions and problems and work out plans for reorganization of such districts in harmony with the provisions of the act. Many of our counties are adjacent to four other counties. All are adjacent to at least two. Thus, in operation the reorganization committees may be concerned with questions involving the creation of school districts and the means of raising revenue for the support of schools in districts extending beyond the county boundaries and into other counties.

In addition, it must be noted that section 6 of the act (G. S. 1945 Supp. 72-5606) provides that if the committees fail to perform their duties the state superintendent of public instruction shall perform such duties, subject to the supervision of the state board of education. Therefore, the involved statutes cannot be considered as pertaining only to local legislation concerning the county business by the county tribunals. The extended and comprehensive brief filed

by the office of the attorney general in behalf of the defendants concedes that the legislature was proceeding pursuant to section 2 of article 6 of the constitution to establish a uniform system of schools in the state and reaches the conclusion that "This is not a matter of local legislation or administration which can be conferred upon local tribunals transacting the business of the county." We note, also, that the defendants' brief states that "The duty to establish a uniform system of common schools is imposed upon the legislature itself by section 2 of article 6 of the constitution of Kansas. The express affirmative provision of section 2 of article 6 is an implied inhibition which prohibits the legislature from delegating this legislative power to a local tribunal under section 21 of article 2. (*Prouty v. Stover*, 11 Kan. 235; *State, ex rel., v. Storey*, 144 Kan. 311, 38 P. 2d 1090, and *Wulf v. Kansas City*, 77 Kan. 358, 363, 94 Pac. 207.)" Even if we might be inclined to agree that section 2 of article 6, providing that the legislature shall establish a uniform system of common schools, may by implication prohibit their being established by a county committee, given power to legislate, because the express provision applies to the exact subject matter, that interesting question need not be decided. We are unable by any process of rational reasoning to reach the conclusion that the act under consideration can be held valid upon the theory that it vests in a county tribunal only legislative power to pass local legislation. It follows that the constitutionality of the act cannot be upheld upon such a basis. In obedience to the admonition that we must hold the act constitutional, if such can be done upon any reasonable theory, the court turns with hope to consideration of the question whether the act confers upon the school reorganization committees only administrative power as distinguished from legislative.

4. At this point in the opinion it should be noted that all of the preceding part thereof is predicated upon the conclusion that the power vested in the school reorganization committees is clearly legislative in character. The brief filed in behalf of the defendants consistently asserts that the power conferred upon the committees is only administrative. If such be sound, perhaps the act can be considered as valid insofar as the delegation of power is concerned, provided standards are fixed therein upon which a fact-finding administrative board is empowered to take action. But standards there must be. Mr. Justice Cardozo stated in his dissenting opinion in *Panama Refining Co. v. Ryan*, 293 U. S. 388, 79 L. Ed. 446, "I

concede that to uphold the delegation there is need to discover in the terms of the act a standard reasonably clear whereby discretion must be governed." Mr. Chief Justice Hughes has stated that the power must be limited by boundaries, circumscribing the limitations upon that power. Standards are difficult to define because of the variable nature thereof. They have been referred to as conditions, restrictions, limitations, yardsticks, guides, rules, broad outlines and similar synonymous expressions hereinafter set forth. It has been held that in the creation of administrative tribunals the power given them must be "canalized" so that the exercise of the delegated power must be restrained by banks in a definitely defined channel. Ordinarily the standards must be sufficiently fixed and determined so that in considering whether a section of a statute is complete or incomplete the test is whether the provision is sufficiently definite and certain to enable one reading it to know his rights, obligations and limitations thereunder. For present purposes it may be said that a standard is a definite plan or pattern into which the essential facts must be found to fit before specified action is authorized. We can be certain of one test—a legislative fiat which provides that an administrative agency shall consider the elements which might affect legislation and then act as it sees fit—does not fix a standard. (See the extensive consideration of this question by Mr. Chief Justice Hughes in *Panama Refining Co. v. Ryan,* supra.)

5. We turn next to the context of the act to ascertain if it furnishes a declaration of policy or a standard of action which can be considered as controlling or regulating the delegated power. All references will be made to the sections of the act as they are published in G. S. 1945 Supplement. The first section of the act (72-5601) sets forth definitions and requires no consideration. The next section (72-5602) provides for the creation of a division of school reorganization within the state department, consisting of the assistant state superintendent and the rural school supervisors. The duty of the division thereby created is to study all factors which affect the determination of proper district boundaries of the elementary school system within the state, and to counsel and advise with the school reorganization committees. The section provides that the division shall make such rules and regulations as may be necessary to govern its own procedure, subject to the approval of the state department, but it is not authorized to act with respect to any standards fixed by the legislature, or decided upon by the division of

school reorganization, in such manner that its action would be binding upon the county committees. There is nothing whatever in section 72-5602 which in any way fixes standards as a basis for the work of the reorganization committees.

Section 72-5603 provides that there is created in each county of the state a school reorganization committee; that the committee members shall be appointed by the board of county commissioners of each county provided the appointees have certain qualifications therein set forth. According to the provisions of 72-5604, the county superintendent of public instruction is not a member of the committee but shall serve as secretary of the committee. Thus, it appears that one of the constitutional officers is to act only in an administrative or ministerial capacity. Section 72-5605 relates to compensation and expenses. Section 72-5606 provides for meetings of the committee and it also provides, as hereinbefore set forth, that in the event the state superintendent finds that any county reorganization committee has failed to make a comprehensive study of the school system in the manner and within the time required by subsection 1 of section 7 (72-5607, ¶ 1) or if thereafter he finds that such committee is unable or is neglecting or refusing to exercise its powers in performance of its duties for any reason, the state superintendent, subject to the approval and under the supervision of the state board of education, is authorized and directed to exercise all such powers and perform all such duties in accordance with the applicable provisions of the act. It should be noted that the state superintendent of public instruction is given no power to act unless the committee fails to act. Therefore, it is possible under the provisions of the act that school districts throughout the entire state can be reorganized if the committees act promptly without any supervision or control by another constitutional officer—the state superintendent of public instruction. The next section (72-5607) of the act pertains to the powers and duties of the county committee. The statute reads: "Except as herein otherwise provided, the county committee shall have the general power and authority to reorganize the school districts of the county and in the development, preparation, final consideration and adoption of plans for the reorganization of school districts of a county, each county committee shall be governed by the following powers, duties and restrictions." We have reached the crucial crux of the question and seek eagerly to find a general outline of policy which sets forth the circumstances

and conditions under which the committee may function. The statute continues:

"(1) Within six months after its organization the committee shall make a comprehensive study of the county school system in order to consider and determine: (*a*) The assessed tax valuation of existing districts and the differences in such valuation under possible reorganization plans; (*b*) the size, geographical features and boundaries of the districts; (*c*) the number of pupils attending school and the population of the districts; (*d*) the location and condition of school buildings and their accessibility to the pupils; (*e*) the location and condition of roads, highways and natural barriers within the district; (*f*) the school centers where children residing in the districts attend high school; (*g*) conditions affecting the welfare of the teachers and pupils; (*h*) the boundaries of other governmental units and the location of private organizations; and (*i*) *any factors* concerning adequate school facilities for the pupils." (Emphasis supplied.)

Subsection (2) reads:

"In cases of school districts containing territory lying in two or more counties, the reorganization committees of the counties involved shall meet in joint sessions at a place agreed upon by said committees and consider the various questions and problems *and work out plans for reorganization of such districts* in harmony with the provisions of this section and related provisions of this act." (Emphasis supplied.)

Subsection (3) reads:

"Change the boundaries of school districts maintaining high schools in cases where the territory is or can be made conterminous, *insofar as it is deemed advisable,* in order to eliminate the overlapping boundaries of high-school districts and elementary school districts and consider the uniting of such districts under one school board." (Emphasis supplied.)

Subsection (4) reads:

"The county committee shall not in any of its reorganization plans place any territory in another school district if such territory at the time this act takes effect is situated within the boundaries of a school district in which is located a city of the first or second class."

Subsection (5) reads:

"Determine the value and amount of all school property and all bonded and other indebtedness of each school district affected and consider the amount of all outstanding indebtedness, and to make an equitable adjustment of all property, assets, debts and liabilities among the districts involved: *Provided,* Where, a district at the time any reorganization order becomes effective, has any legally existing bonded indebtedness or outstanding no-fund warrants, then such territory shall continue to be liable therefor in accordance with the applicable provisions of section 10-119 of the General Statutes of 1935 and any amendments thereto."

Subsection (6) relates to a record being kept of proceedings and rehearings and does not set forth any standards. Subsection (7) reads:

"Prepare in writing and by charts the plans for reorganization and submit them to the patrons for hearings as provided in section 8 (72-5608) of this act."

Subsection (8) reads:

"The county committee shall, before March 1, 1946, adopt an order disorganizing all districts which had no children attending a public or parochial elementary school during the preceding school year and attaching such disorganized territory to an adjoining district or districts. Said order shall become effective on March 1, 1946, and the provisions of sections 8 to 15 (72-5608 to 72-5615), inclusive, of this act shall not be applicable thereto."

We have exhausted section 72-5607 and pause to ponder the problem whether such section fixes any standards. It is true that the section of the statute sets out a general outline of the various elements which might ordinarily be considered by the legislature in enacting legislation providing for the reorganization of school districts but the general outline contains nothing in the nature of a basis upon which the reorganization committee is instructed to act. Subsection (4) is definite but does not set forth a basis for the reorganization of other school districts. Subsection (8) contains a definite mandatory disorganization order made by the legislature, but the entire act cannot be considered as prescribing a definite standard for establishing other school districts merely because one class of school districts shall be disorganized. Perhaps we will find a standard for action in the subsequent provisions of the act. Consequently, we turn to them for analysis.

Section 72-5608 relates to hearings on reorganization plans. It provides that when any committee has prepared its written plans and charts for reorganization, the committee shall publish certain notices and hold meetings. At the meetings the committee is authorized to hear all objections, suggestions and testimony offered by any party or school district interested in the reorganization plans. The statute then continues: "After such hearings, the committee shall make such revisions or modifications in its written plans *as it deems necessary* and shall thereupon adopt its final reorganization plans. . . ." (Emphasis supplied.) The statute continues: *"Provided,* Whenever any reorganization plan proposed by the committee contemplates or provides for the inclusion of any rural territory in a city school district having within its boundaries a city

having a population of more than 15,000, such rural territory shall not be included in the proposed city school district unless a majority of the legal electors residing in such rural territory consent in writing to the inclusion of such rural territory in the proposed school district." Following such provision is a provision for determining the sufficiency of the consent. Thereafter the statute continues as follows: "If after the adoption of any final reorganization plan and before December 31, 1948; the committee shall find and determine that any final reorganization plan adopted is unsatisfactory, inequitable or *needs to be changed for any reason,* then said committee may again reorganize the territory involved in such order in the same manner as the original reorganization plan was adopted and the committee shall then meet in the same manner as prior to the completion of the original reorganization." (Emphasis supplied.)

Section 72-5609 sets forth that after the adoption of its reorganization plans, the committee shall formulate and *"adopt such orders as may be necessary to:* (1) Properly organize, reorganize, disorganize, number or renumber the school districts affected in conformity *with its adopted plans;* (2) attach or detach the territory affected by such plans; and (3) properly effect the reorganization as set forth in such plans." (Emphasis supplied.)

The next section, 72-5610, provides for rehearings upon application being filed therefor by any party, defined in the act, who is interested in the proceeding. The section provides that the application shall be heard by the committee and be by it determined within thirty days after the date wherein all applications for rehearings may be filed. Such section continues as follows: *"Provided,* In case any published order of the committee is changed or modified upon any rehearing then any party aggrieved, whether a party to the proceedings or not, may appeal to the district court as provided in section 11 (72-5611) of this act, . . ." We note that the last-quoted section fails to fix any standards upon which the committee shall determine, on rehearing, whether any of its orders shall be changed or modified. Nothing can be gained by a tedious review of the subsequent sections of the act because it cannot be said that therein will be found any provisions in the nature of standards.

The sections of the statute hereinbefore quoted establish a definite plan for the creation of the committees. The statutes also provide for procedure pertaining to meetings, the keeping of records,

rehearings and appeals. But nowhere within the four corners of the act can we find a standard upon which the committees are authorized to act or not to act on the question whether a new school district shall be organized They are free to select as they choose from the many and various elements suggested by the legislature or from "any factor" a basis for action, and then, without making any finding with respect to any fact or factor, are "granted the general power and authority to reorganize the school districts of the county" or "in two or more counties" and "Change the boundaries of school districts maintaining high schools in cases where the territory is or can be made conterminous, insofar as it is deemed advisable, . . ." The committees are authorized to "adopt such orders as may be necessary . . . to . . . properly organize, reorganize, disorganize, number, . . ." the districts affected "in conformity with its [the committee's] adopted plans, . . ." The act does not require the committees to make findings as to any essential fact or circumstance. Not only is such omission evident but we fail to find within the act any specified plan or policy on the part of the legislature which can be construed as an "intelligible principle" or "general rule" in compliance with which the committees are authorized to act. When there is a total absence of a "primary standard" or "broad outline," it is impossible "to fill up the details" as was said by Mr. Chief Justice Marshall in *Wayman v. Southard,* 10 Wheat. 1, 43, 6 L. Ed. 253, 263, because the details are not confined within any definite area or orbit. In such circumstances, the orders which the committees may make are not subordinate rules within the framework of the policy which the legislature has sufficiently defined. A standard cannot be set up which is so indefinite "as to confer an unlimited power." (See *Federal Radio Comm'n. v. Nelson Bros. Co.,* 289 U. S. 266, 279, 285, 77 L. Ed. 1166, 1175, 1178, 53 S. Ct. 627, 89 A. L. R. 406.) When such occurs the recognized distinction applies which was pointed out by the supreme court of Ohio in *Cincinnati, W. & Z. R. Co. v. Clinton County,* 1 Ohio St. 77, 88, between the "delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law." The difference between a statute which delegates legislative authority to create a law and the right to make regulations for the administering of the law has controlling significance. (See *United States v. Grimaud,* 220 U. S. 506,

517, 55 L. Ed. 563, 567, 31 S. Ct. 480, and our rather recent case of *Russell State Bank v. Steinle,* supra.) As was said by this court in the case of *Brown v. Illinois Bankers Life Assur. Co.,* 144 Kan. 670, 63 P. 2d 165:

". . . This is not a case where the legislature, after announcing a definite. policy, established necessary standards and then delegated to the commissioner of insurance the power to make *subordinate* rules and regulations whereby the declared policy was to be made effective. The contrary is true concerning the act involved. Here power was attempted to be delegated without prescribed standards and to enact not *subordinate* rules and regulations, but rules and regulations which would supersede any and all existing laws, or parts thereof, in conflict therewith.

"In *Schechter Corp. v. United States,* 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, a unanimous court held:

" 'Extraordinary conditions do not create or enlarge constitutional power, and cannot justify governmental action outside the sphere of constitutional authority.' (Headnote, ¶ 1.)" (p. 677.)

In *State, ex rel., v. Hardwick,* supra, the opinion reads:

"Under this delegation, each county may set up its own standard, and this is more clearly discernible from the fact that the remaining portions of the statute set no standard whatever by which the local board of commissioners is bound to act. Boards in adjoining counties may prescribe widely varying standards or no standards at all, for compliance with the act is not mandatory." (p. 8.)

We have been unable to find in the act under consideration any standard upon or outline within which the legislature has admonished the committees to act in any designated. manner. It seems reasonably clear that the legislature, in passing the act under consideration, has inadvertently ignored the constitutional mandate which reads: "The legislature shall encourage the promotion of intellectual, . . . improvement, by establishing a uniform system of common schools, . . ." (Sec. 2, art. 6.) The legislature does not establish a, uniform "system" by delegating to a committee unlimited authority to "work out plans for reorganization of such districts" and "adopt such orders as may be necessary, . . . to: . . . Properly organize, reorganize, disorganize, . . ." schools. The act provides no definite system whatever whereby the respective committees may determine whether school districts shall be organized or reorganized. Restraint against the improper delegation of power long has been recognized as "vital to the integrity and maintenance of the system of government ordained by the constitution." (See *Fields v. Clark,* 143 U. S. 649, 692, 36 L. Ed. 294, 12 S. Ct. 495.)

It is never proper to assert that constitutional commands should be disregarded because detrimental consequences may follow or because an emergency exists. Such is the rule in times of war. (See *Hamilton v. Kentucky Distilleries Co.*, 251 U. S. 146, 40 S. Ct. 106, 64 L. Ed. 194, and *Highland v. Russell Car Co.*, 279 U. S. 253, 49 S. Ct. 314, 73 L. Ed. 688.) The court is forced to conclude that the 1945 act is void because it constitutes an improper delegation of legislative power in violation of section 1 of article 2 of the constitution.

6. The court has considered the question whether the unconstitutionality of the sections of the act which refer to functions by the committees impairs the validity of all other sections and particularly the sections pertaining to elementary school finance. Of course, the court would prefer to uphold the validity of as many sections as possible but we are confronted with the rule of statutory construction which reads:

"The general doctrine is that only the invalid parts of a statute are without legal efficacy. This is qualified by the further rule that if the void and valid parts of the statute are so connected with each other in the general scheme of the act that they cannot be separated without violence to the evident intent of the legislature, the whole must fall. These rules are of everyday enforcement in the courts." (*State v. Smiley*, 65 Kan. 240, 247, 69 Pac. 199, and see *State, ex rel., v. Stonehouse Drainage Dist.*, 152 Kan. 188, 191, 102 P. 2d 1017.)

The qualifications set forth in the rule force us to the conclusion that "the whole must fall." The first section under the heading, "Elementary School Finance," being 72-5616, refers to functions of the "county committee." The next to the last section (72-5622) of the article also refers to hearings before the "reorganization committee." Other sections refer to provisions of "this act." Apparently the provisions relative to school finance are predicated upon the presumption that the committees will reorganize the schools. In view of such circumstances we cannot hold that some sections can be separated without violence to the evident intent of the legislature.

Since the act is held unconstitutional for the reasons herein set forth, it is unnecessary to consider the other possible constitutional violations asserted by the plaintiff. There may be those who will think that the entire court should consider all constitutional questions presented and write a treatise covering a substantial part of the constitutional law of Kansas for the guidance of the legislature.

Assuming that such a task would be as welcome as any other, nevertheless, its performance would necessitate suspending consideration of all appeals and other proceedings pending in the court. Obviously, the incident delay would be an intolerable imposition upon the rights of many litigants.

7. As stated in the first paragraph in this opinion, the plaintiff contends that House bill 376, which will be printed in the 1947 Session Laws as chapter 374 thereof, is likewise unconstitutional for the same reason, among others, that the 1945 act is hereby held unconstitutional. Consideration of the contention requires examination of the 1947 amendments. House bill 376 amended sections 72-5603, 72-5604, 72-5606, 72-5607, 72-5608, 72-5609, 72-5610, 72-5611, 72-5612, 72-5614, 72-5615 and 72-5623, G. S. 1945 Supp., and repealed such original sections.

It is unnecessary to review in detail the various changes made by the amendments. A different method for the creation of a school reorganization committee is provided therein upon an election basis but we are not now concerned with the provisions relative to the creation of the committee, or the terms of the members and other provisions not germane to the question before us for consideration. After providing for the election of the committee, the amended section 72-5604 provides that "All the powers, duties, authority and jurisdiction conferred upon the school reorganization committees under the provisions of chapter 291 of the Session Laws of 1945 or any amendments thereto shall, upon the election and organization of a school reorganization committee under the provisions of sections 1 and 2 of this act, be and are hereby transferred to and conferred upon the committee so elected . . . Said committee so elected shall organize in the manner as prescribed in section 72-5606 of the General Statutes Supplement of 1945 or any amendments thereto and shall proceed to exercise all of the powers, duties, authority and jurisdiction as provided by law." Section 72-5604 again provides that "The county superintendent of public instruction shall serve as secretary of the committee . . ." Under the provisions of amended section 72-5606 the state superintendent of public instruction is given the same qualified power as was provided in the original act, to the effect that the state superintendent may act for the purpose of reorganizing school districts if any committees established in conformity with the act are unable or are neglecting or refusing to exercise their powers.

The amended section 72-5607 provides:

"Except as herein otherwise provided, the county committee shall have the *general power and authority to reorganize the school districts* of the county into a convenient number of districts *as practicable* so as to provide generally accepted minimum elementary school educational opportunities and *standards* and so that each school district shall have at least ten pupils and in the development, preparation, final consideration and adoption of plans for the reorganization of school districts of a county, each county committee shall be governed by the following powers, duties and restrictions: . . ." (Emphasis supplied.)

We note that the last-quoted section provides that the county committee shall have power to provide "standards" but that there is added a definite provision to the effect that each school district shall have at least ten pupils. Subsection (1) of amended section 72-5607 is the same as subsection (1) of the act of 1945. Subsection (2) is the same also but there is added thereto a provision pertaining to procedure in the event one or more county committees refuse to meet in joint sessions or fail to agree on all final reorganization plans. The addendum provides for the application to the state superintendent for hearing before him, and also provides that the state superintendent shall render a decision as to the proper solution of any question raised at the hearing, but again the power of the state superintendent is predicated upon a failure of the committee or committees to act. Subsection (3), as amended, provides that the county committee shall not in any of its reorganization plans place any territory in another school district if such territory is situated within the boundaries of the school district in which is located a city of the first or second class. Thus, we find in subsection (3) of the amended act the same restriction which was designated as subsection (4) in the original act but no standard upon which school districts may be reorganized in the event the proposed district does not have located within it a city of the first or second class. The amended act omits subsection (3) of the original act, which pertained to the change of boundaries of school districts maintaining high schools. Subsection (4) of the amended act is the same as subsection (5) of the original act except that there has been added thereto authority given to the committee to designate the total expenditure which may be made by the new school district for the balance of the school year after March first, and another provision relative to the liability of a disorganized school district for any debts of any district of which it may become a part. The remaining subsections of 72-5607, as amended, are practically the same as

those contained in the original enactment and do not pertain to standards.

Several changes were made in amended section 72-5608. The original section read: "When any committee has prepared its written plans and charts for reorganization, it shall fix dates and places for hearings . . ." The amended section reads: "When any committee has considered and determined the various factors as provided in subsection (1) of section 72-5607 of the General Statutes Supplement of 1945, or any amendments thereto, and has prepared its written plans and charts for reorganization, based on such study, it shall fix dates and places for hearings . . ." We note that the change only admonishes the committee to consider and determine the various factors provided in subsection (1) which includes "any factors concerning adequate school facilities for the pupils." The other changes in section 72-5608 are not significant in our search for standards.

Section 6 of the amended act again provides, in much the same manner as original section 72-5609 that the committee shall adopt the proposed reorganization plans as the final reorganization plans and shall formulate and adopt such orders as may be necessary to "(1) Properly organize, reorganize, disorganize, number or renumber the school districts or territory affected in conformity with its adopted plans; . . ." No limitations or restrictions whatever appear in amended section 72-5609 relative to what kind of plans the various committees shall adopt.

Amended section 72-5610 again refers to rehearings as did the original act. The section provides that "The committee may change, modify or set aside its order." But nothing is stated in the section which provides the basis upon which the committee may make such changes and we find nothing in the subsequent amended sections of the act which provides such a basis. The only provision in the nature of a limitation upon the power of a committee which we find in the amended act which was not in the original act is that hereinbefore set forth reading: "Each school district shall have at least ten pupils." But such definite standard was made indefinite by the subsequent provision in subsection (8) of the same section which reads:

"The provisions of this section which require each school district to have at least ten pupils shall not apply to any case where the county committee shall find and determine, by reason of geographical isolation or transportation

difficulties, it is impracticable to reorganize a district in such a manner that it will have such number of pupils, nor to any case where the county committee shall find and determine, by reason of sparsity of population, the formation or reorganization of a school district in such a manner would make it of such extreme size or area as to work an undue hardship upon the pupils and patrons thereof: *Provided,* That no such district shall be included in any final order unless the same has been approved by the state board of education."

Nothing is said in the act as to what may constitute geographical isolation, transportation difficulties, sparsity of population or extreme size. Decision upon all such factors is left to the discretion of the committee but the indefiniteness incident to the section last quoted is not the principal difficulty involved. Even if we assume that the act is sufficiently definite in its provisions pertaining to *when* a school district, which does not have at least ten pupils, may be organized, we are still unable to find any definite basis upon which the committee must or must not organize school districts having therein more than ten pupils or less than ten pupils. It is true that the amended act also has restrictions prohibiting the attachment of rural territory to a city school district having within its boundaries a city having a population of more than 15,000, and other restrictions, unless a majority of the qualified electors residing in such rural territory consent in writing thereto. It is also true that the committee is restrained in the reorganization of a school district against placing any territory in another school district if such territory at the time is situated within the boundaries of a school district in which is located a city of the first or second class. But in all other instances the county committee is given unlimited power to organize, reorganize and disorganize the school districts of the county "into a convenient number of districts as practicable." In other words, the legislature has delegated to the committee the duty of determining what is practicable in the organization of school districts without fixing any standards which must be followed by the committee in making such determination. Such a duty involves the exercise of legislative power. We cannot find that the legislature, by the amendments, has cured the fundamental defect in the statutes. Again, we must observe that the legislature's authority is restrained by the constitution and that legislative power definitely assigned by the constitution to the legislature or to certain constitutional officers cannot be surrendered or delegated by that department to any commission. The express provisions in the constitution, by implication, deny to the legislature the power to delegate to any other branch

or agency of government unlimited legislative power to reorganize school districts. The sections of the 1945 act which were repealed, amended and reënacted as corresponding sections in House bill 376 by the 1947 legislature, therefore, also are invalid because they constitute an improper delegation of legislative power in violation of section 1 of article 2 of the constitution.

In addition to repealing and amending certain sections of the 1945 act, the 1947 legislature enacted, as a part of House bill 376, certain additional sections pertaining to the reorganization of schools. The first entirely new section requiring consideration appears as section 13 of House bill 376. Such section provides, in substance, that if the voters of a proposed reorganized district shall for any reason fail, neglect or refuse to elect a board or if such elected board shall fail to qualify, the county superintendent shall appoint three persons to serve as a school district board and that should the county superintendent be unable to find three persons willing to serve on such board, he shall "with the advice and consent of the county reorganization committee" attach the proposed reorganized district to some adjacent district. There is nothing in section 13 which refers to standards or that gives the county superintendent power independent of the consent of the committee.

Section 14 of the 1947 act (House bill 376) may set forth standards which a court might consider as sufficiently definite. But unfortunately we do not reach for decision the question whether the restrictions and limitations contained in section 14 are sufficiently definite to constitute standards or a constitutional plan within which school districts may be organized. The section reads:

"It shall be the right and privilege of any group of residents *within a reorganized district* to make a proposal for a new school district to be formed out of territory wholly *within said reorganized district* by filing with the county superintendent . . ." (Emphasis supplied.)

It is useless to extend the opinion further by quoting the remainder of the section. The powers therein conferred and the possible standards which may be therein set forth cannot be exercised or followed unless a school district first has been reorganized. Unquestionably, the legislature contemplated that the reorganized districts referred to would or could be reorganized by the county committees. This court is holding that such county committees do not have constitutional power to reorganize school districts. Consequently, there is no proper basis for the exercise of the rights and

privileges conferred upon a group of residents under the provisions of section 14. As before stated, the powers and duties vested in the state superintendent of public instruction and possibly in the county superintendents by the provisions of the act are contingent upon the county committees' failure to act. Thus, there is a definite condition precedent to the exercise of power by either of the constitutional officers. It is clear that it was the intention of the legislature that such officers should have no power to reorganize the school districts unless the committees fail to act. It must follow that since the committees cannot act because they are unconstitutionally constituted, there remains no basis for action on the part of the constitutional officers. As a result, it cannot be said that the legislature contemplated that the provisions of section 14 would become operative when a school district was reorganized by the state superintendent of instruction or by a county superintendent even in the event the creation of county committees would be declared to be unconstitutional.

8. The foregoing brings us to consideration of the remaining provisions of the 1947 act. Section 15 simply provides that the act shall become inoperative on March 15, 1950. Section 16 reads as follows:

"If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable."

The question is presented: Can any provisions or applications of the act be given effect without the provisions or application which the court has declared to be invalid? In the opinion of the court they cannot. Surely, the legislature anticipated that the county committees should have power to reorganize school districts. The court holds to the contrary. The substance of the entire act is founded upon the assumption that the county committees may function. Since they cannot, the court is of the opinion that the entire act must be declared unconstitutional.

In conclusion, it should be observed that there is no sound theory of constitutional law which sustains a contention that no general standards whatever are necessary when the subject of administration requires consideration of varying complex elements. And there is no sound theory to the effect that educational problems need not be determined in compliance with constitutional restraints against

the unlawful delegation of powers merely because of the intricacy of their details. The constitutional principles involved exceed in magnitude the importance of any one case. If a legislature can delegate its legislative duty to establish schools to a committee of its creation, then a precedent is also created which might permit the delegation of all legislative powers. The principles transcend the present problem and challenge the fundamental concepts of constitutional government in the future. The constitution can be amended or repealed by the people but the foundation of government should never be altered by a court so that the base, upon which all must be built, may conform to a court's desire or a legislature's design.

The court is refraining intentionally from giving consideration in this case to certain validating acts passed by the 1947 legislature designated as House bill No. 407 and House bill No. 447 because their validity was not questioned under the issues in the case, and neither counsel for the plaintiff nor for the defendants have submitted briefs upon the question. The acts were referred to in a supplemental brief filed by counsel, *amicus curiae*, but it would be highly improper for the court to pass upon questions which were not within the issues and consequently not briefed by counsel for all parties.

The school reorganization act of 1945, being G. S. 1945 Supp. 72-5601 to 72-5623, inclusive, and House bill No. 376, enacted by the 1947 legislature, are unconstitutional.

THIELE and PARKER, JJ., (dissenting) : In view of the conclusion reached by the majority of the court as reflected in the foregoing opinion, it is essential that the opinion be promptly filed. We content ourselves by saying that in our judgment the conclusion reached by the court is not sound and under analogies which may be drawn from it, the validity of much of our school and other legislation may be open to question.