No. 31,775

THE STATE OF KANSAS, ex rel. BRONCE JACKSON, County Attorney of Rice County, *Appellee*, v. SCHOOL DISTRICT No. 2 IN RICE COUNTY et al., *Appellants*.

(34 P. 2d 102.)

Opinion filed July 7, 1934.

*A. C. Malloy, Roy C. Davis, Warren H. White, Frank S. Hodge,* all of Hutchinson, and *John W. Blood,* of Wichita, for the appellants.

*Roland Boynton,* attorney-general, *Bronce Jackson,* county attorney, and *Ben Jones,* of Lyons, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the state to determine constitutionality of an act of the legislature relating to the subject of detaching land from one school district and attaching it to another district. A copy of the act is appended hereto. Pursuant to the act land was detached from district No. 1 of Rice county and attached to defendant districts. The district court held the act to be void as transgressing section 17 of article 2 of the constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The section constitutes an amendment to the constitution adopted at the general election held in November, 1906. The original section read as follows:

"§ 17. All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted."

Considering the original provision, the court held the legislature was the judge of when special legislation was necessary. The practical results were so shocking to the sense of civic decency, and so detrimental to the public welfare, the amendment was adopted. The amendment "scotched the snake, not killed it," and crudely or cunningly conceived special laws, masquerading as general laws, are continually coming before the court. In the course of years since the constitution was amended a few essentially special acts have gotten by, but the intention of the court is to apply the amendment in such a way it will accomplish the purpose of its adoption.

In this instance the subject of the act was the common subject of disorganization and organization of school districts by detaching land from one district and attaching it to another. In form the act was a general act, framed on the principle of classification. In "any school districts" where the classifying conditions exist a qualified property owner may petition for withdrawal. It is perfectly true that what the legislature was in fact doing was to offer to a few individuals special privilege to withdraw, at their option; but the legislature attempted to do this by a general law. While the principle of classification was burlesqued, the legislature attempted to frame a general law. A division of the brief of appellants is devoted to defense of the law as a general law, and the face of the act discloses determination by the legislature that a general law could be made applicable to the situation with which it was dealing.

It is idle to discuss validity of the act as a piece of general legislation. It was flagrantly special, and consequently failed to accomplish its purpose.

In the district court, as here, defendants adopted Zekle's attitude when watching Huldy peelin' apples:

> "He stood a spell on one foot fust,
> Then stood a spell on t'other."

Counsel said:

"We take two positions: One is that the act is and can be, under the decisions, termed a 'general law,' but if termed a 'special law,' that the facts we will offer to prove will amply justify a special law."

An act of the legislature cannot be both general and special. Whether the legislative design was to pass a general act or a special

act must be determined from the act itself. Perhaps determination may be aided in some instances by consideration of general criteria utilized in any case of statutory interpretation. If an act is designed to be general, its validity must be tested in one way. If designed to be special, its validity must be tested in another way. What test shall be applied to determine validity cannot be known until the nature of the act is ascertained.

While contending in the district court that the act is special, defendants offered oral testimony to prove the conditions were so peculiar no general law could do the work of this law. The district court held the testimony to be inadmissible, but received it for purpose of review, at the hearing on the motion for new trial.

When the constitution was amended a new judicial duty was imposed on the courts. In due time this court considered how that duty should be discharged, and the notion that oral evidence might be received to determine whether a general law could be made applicable was definitely rejected.

"The constitution expressly forbids special laws where a general law can be made to apply. When a special law is passed, therefore, the legislature necessarily determines in the first instance that a general law cannot be made to apply. But their determination is not final. There is, of course, a presumption that public officers have discharged their duties properly, and every act of the legislature is presumed to be valid until there is a judicial determination to the contrary. But when a special law has been enacted and its validity is assailed in the courts the question is to be finally determined by the courts as a judicial question, uncontrolled by the determination of the legislature. The courts must determine the question as other purely judicial questions are determined, by reference to the nature of the subject; not upon proof of facts or conditions, but upon the theory that judicial notice supplies the proof of what courts are bound to know, and that courts must be aware of those things which are within the common knowledge, observation and experience of men generally." (*Anderson v. Cloud County,* 77 Kan. 721, 734, 95 Pac. 583.)

From the face of this act and indisputable data contained in public documents and records, anybody could locate the county to which the act refers as Rice, and the city of the second class as Sterling; and could know the general character of the school facilities maintained in the Sterling district. The exorbitant school-tax rate and the land affected are shown by the act. Considering the fact a man could not get out if his neighbors on three sides did not want out, it could be assumed a similar situation did not exist elsewhere in the state of Kansas, or in any other state of the United

States, or in any foreign country. Existence of hard times in 1932 and 1933 needed no proof. Some reason or assumed necessity for an act, satisfying to the legislature, is always taken for granted, and the details of school maintenance and operation in Sterling, and of the plight of Mr. Arthur L. Dill, who was obliged to pay $450 school tax in 1932 on a half section of land, part of which was pasture and poor soil, contributed nothing to solution of the constitutional question. In an experience of more than a quarter of a century the court has not felt handicapped by the rule in *Anderson v. Cloud County,* in considering special legislation cases, and the rule is adhered to.

Whether the act be considered as a general act or as a special act, it is void.

It is a distressing fact that the school laws of this state are in a chaotic condition, and in this instance the legislature just turned the matter of staying in a district over to landowners. Specifically, certain landowners were authorized to exclude their land from the school district in which the land was located, if they so desired. Manifestation of the desire was by "petition" to the county superintendent. So far as the subject of withdrawal is concerned, the document was misnamed. A petition is a formal written request, made to some official or body having authority to grant it. In this instance, the county superintendent had no authority to grant or to refuse the so-called petition, which was, in operation, merely a declaration of intention of the signer, effective on presentation to the county superintendent.

The brief for appellants contains the following:

"It will be noted that the act in question only makes it optional with the electors or property owners whether they shall be detached from the district. The detaching and allocation to the adjoining district is performed by the county superintendent."

The latter portion of this statement is not in accord with the plain terms of the act. A landowner, by exercise of his own will, effected withdrawal of his land. The county superintendent was then required to get busy and attach the land to some other district; but meantime the land was not in any school district.

Every annexation of land to or exclusion of land from the corporate limits of a municipal or quasi-municipal organization is to that extent a reorganization, and it is not debatable that the legislature is powerless to clothe a private individual or a group of pri-

vate individuals with power over corporate organization. An attempt to confer such power is said to be an attempt to delegate legislative power, which is futile. This is settled by a long line of decisions, beginning with *Comm'rs of Wyandotte Co. v. Abbott*, 52 Kan. 148, 34 Pac. 416, and extending to *Barrett v. City of Osawatomie*, 131 Kan. 50, 289 Pac. 970. Appellants cite certain decisions of this court as approving delegation of legislative power to petitioners. It is not necessary to review them, because a simple reading of the opinions will disclose that not one of them does so.

If it were necessary or proper to do so, it could readily be demonstrated that a valid general law, of wholesome, uniform operation throughout the state, could have been framed to cover all grievances of the character of those sought to be redressed by this act. It could further be demonstrated that the act is void for reasons which have not been discussed. As a piece of legislation, the act is a travesty, and the judgment of the district court holding the act to be unconstitutional is affirmed.

---

## HOUSE BILL No. 237

### [L. 1933, ch. 263]

An Act relating to the redistricting of certain school districts containing cities of the second class located in any county having a population of not more than 13,450 and not less than 13,200, and having an assessed tangible property value of not more than $36,400,000 and not less than $35,800,000, and having an area of not more than 750 square miles and not less than 650 square miles.

*Be it enacted by the Legislature of the State of Kansas:*

Section 1. In any school districts containing a city of the second class, and having a mill levy for such school purposes of not less than 17 mills and not more than 21 mills for the year of 1932; and which also contains agricultural land outside of the boundary of such city, which school districts are located in counties having a population of not more than 13,450 and not less than 13,200, and having an assessed tangible property value of not more than $36,400,000 and not less than $35,800,000 and having an area of not more than 750 square miles and not less than 650 square miles, any property owner owning property in twenty-acre tracts or more outside of the boundaries of said city shall have the right to petition the county superintendent of public instruction, within sixty days from the date this act takes effect, to withdraw from said school district and to become attached to and be made a part of another school district as hereinafter specified: *Provided,* That the owner of farm land in said district whose property is bounded on three sides by property, none of whose owners petition to be removed from said district, shall not be entitled to have their said properties removed from said district.

SEC. 2. In event of such petition or petitions being filed with the county superintendent within the said sixty days, said property shall thereupon be and become outside of said school district, and within fifteen days after the expiration of said sixty days the county superintendent shall apportion said withdrawn territory to the most logical and convenient adjoining school district, and shall notify the respective owners of property in the withdrawn territory of the school district of which the same becomes a part, and such owner may, within ten days thereafter, if dissatisfied, appeal from the determination of the county superintendent to the board of county commissioners by making application to said board, and providing the county superintendent with a copy thereof, and a notice of the time and place of hearing; and the determination of said board of county commissioners shall be final.

SEC. 3. Upon the withdrawal of any of the property of such school district, all of such property so withdrawn from a school district wherein any bonds shall have been, previous to such withdrawal of such property, legally authorized and existing at the time of such withdrawal, shall be subject to taxation for the payment of such bonds and interest thereon, in the same manner as though no such withdrawal of property from such district had been made, and such taxes shall be levied and collected according to law: *Provided further,* That the change of boundary provided for in this act shall take effect, for taxation purposes, according to the provisions of section 79-1807 of the Revised Statutes, Supplement of 1931, and amendments thereto.

SEC. 4. That this act shall take effect and be in force from and after its publication in the official state paper.