# CALVERT DISTILLERS CORPORATION v. ROSE SNYDER SACHS, *d. b. a.* SNYDER'S CUT RATE DRUG STORE. SEAGRAM-DISTILLERS CORPORATION v. SAME.[1]

June 8, 1951.

No. 35,378.

[1]Reported in 48 N. W. (2d) 531.

*S. A. Weisman,* for appellant.

*Morley, Cant, Taylor & Haverstock* and *A. L. Beardsley,* for respondents.

MATSON, JUSTICE.

In each of two actions, consolidated for appeal, defendant appeals from an order overruling a demurrer to plaintiff's complaint.

Calvert Distillers Corporation and Seagram-Distillers Corporation each brought a separate action under the Minnesota fair trade act (M. S. A. 325.12) to enjoin defendant, a retailer, from advertising, offering for sale, or selling certain alcoholic beverages at less than the minimum prices established by certain fair-trade agreements. In both actions the pleadings and issues are identical, and we shall therefore refer herein only to the Calvert case.

Plaintiff Calvert Distillers Corporation, by its complaint alleges that another corporation of somewhat similar name, The Calvert Distilling Company, is the owner of the brand name and trade-mark entitled "Calvert Reserve Blended Whiskey"; that plaintiff is the *owner's* exclusive distributor in the United States of whiskey sold under said brand and trade-mark and has been specifically authorized by the owner to establish a minimum resale price for such beverage pursuant to the Minnesota fair trade act; that pursuant to §§ 325.08 to 325.14 plaintiff has made fair-trade agreements with more than 100 retail liquor dealers in Minnesota fixing the minimum price at which said Calvert Reserve Blended Whiskey (hereinafter called Calvert Whiskey) shall be sold at retail; that all retail liquor dealers in Minnesota handling said whiskey, including defendant herein, have been notified of the establishment of such minimum retail price; and that defendant, after receiving notice of the establishment of such minimum prices, has repeatedly sold said brand of whiskey at less than such minimum retail price. Although defendant has had notice of the making of such fair-trade agreements, it is admitted that she is not a party to such agreements.

Defendant's appeal is from an order which overruled her demurrer and certified that the question thereby presented is important and doubtful.

Since the filing of the briefs herein and the presentation of arguments to this court, the United States Supreme Court has handed down the controlling decision of Schwegmann Brothers v. Calvert Distillers Corp. 341 U. S. 384, 71 S. Ct. 745, 95 L. ed. 1035, by reason of which the statutory foundation for this action has been swept away and the issues raised on this appeal have become moot. In the Schwegmann case, a Louisiana retailer, who had not signed a fair-trade agreement, refused to abide by the minimum resale prices established by fair-trade agreements made between the distributor and other retailers and sold the affected products at a cut-rate price. The Louisiana statutory section—involved therein—which purports to impose a fixed minimum resale price upon persons who are not signatories to any price-fixing agreement, is substantially identical with § 325.12 of the Minnesota fair trade act, which reads:

"Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of sections 325.08 to 325.14, whether the person so advertising, offering for sale, or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." See, note 2 to Schwegmann Brothers v. Calvert Distillers Corp. 341 U. S. 384, 387, 71 S. Ct. 745, 747, 95 L. ed. 1035, 1044.

In holding that by the Miller-Tydings Act congress did not give its consent to the enactment of state legislation which purports to enforce price fixing not only against parties to a "contract" *but also against nonsigners,* the United States Supreme Court in the Schwegmann case said (341 U. S. 386, 388, 71 S. Ct. 746, 747, 95 L. ed. 1043, 1044):

"It is clear from our decisions under the Sherman Act (26 Stat. 209) that this interstate marketing arrangement would be illegal,

that it would be enjoined, that it would draw civil and criminal penalties, and that no court would enforce it. Fixing minimum prices, like other types of price fixing, is illegal *per se*. United States v. Socony-Vacuum Oil Co., 310 U. S. 150 [60 S. Ct. 811, 84 L. ed. 1129]; Kiefer-Stewart Co. v. Seagram & Sons, 340 U. S. 211 [71 S. Ct. 259, 95 L. ed. 219]. Resale price maintenance was indeed struck down in Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373 [31 S. Ct. 376, 55 L. ed. 502]. *The fact that a state authorizes the price fixing does not, of course, give immunity to the scheme, absent approval by Congress.* [Italics supplied.]

"Respondents, however, seek to find legality for this marketing arrangement in the Miller-Tydings Act enacted in 1937 as an amendment to § 1 of the Sherman Act. 50 Stat. 693, 15 U. S. C. § 1 [15 USCA, § 1]. That amendment provides in material part that 'nothing herein contained shall render illegal, *contracts or agreements* prescribing minimum prices for the resale' of specified commodities when *'contracts or agreements of that description* are lawful as applied to intrastate transactions' under local law. (Italics added.)

"Louisiana has such a law. La. Gen. Stat. §§ 9809.1 *et seq.* It permits a 'contract' for the sale or resale of a commodity to provide that the buyer will not resell 'except at the price stipulated by [the] vendor.' The Louisiana statute goes further. It not only allows a distributor and retailer to make a 'contract' fixing the resale price; but once there is a price-fixing 'contract,' known to a seller, with any retailer in the state, it also condemns as unfair competition a sale at less than the price stipulated even though the seller is not a party to the 'contract'[2] [where the nonsigner clause of the Louisiana act is quoted]. In other words, the Louisiana statute enforces price fixing not only against parties to a 'contract' but also against nonsigners. So far as Louisiana law is concerned, price fixing can be enforced against all retailers once any single retailer agrees with a distributor on the resale price. * * *

\* \* \* \* \*

"* * * We start then with a federal act [Miller-Tydings Act] which does not, as respondents suggest, turn over to the states the handling of the whole problem of resale price maintenance on this type of commodity. What is granted is a limited immunity—a limitation that is further emphasized by the inclusion in the state law and the exclusion from the federal law of the nonsigner provision. The omission of the nonsigner provision from the federal law is fatal to respondents' position unless we are to perform a distinct legislative function by reading into the Act a provision that was meticulously omitted from it."

Pursuant to Schwegmann Brothers v. Calvert Distillers Corp. 341 U. S. 384, 71 S. Ct. 745, 95 L. ed. 1035, the United States Supreme Court has construed the Miller-Tydings Act—and its construction of a federal act is binding upon this court—as amending the Sherman Anti-Trust Act (50 Stat. 693 [1937], 15 USCA, § 1)[2] only to the limited extent of validating, *as between the actual parties to a fair-trade contract* authorized by state law, the fixing of minimum fair trade intrastate resale prices, without, however, authorizing the enforcement of such minimum resale prices against any person who is not a party to such contract. It follows that § 325.12 is invalid and inoperative insofar as it purports to authorize the enforcement of minimum fair-trade resale prices against any person who is not a party to the contract by which the minimum resale prices were established with respect to commodities in interstate commerce.

In each of the two actions involved herein, the order of the trial court overruling defendant's demurrer is reversed.

Reversed.

[2]For Sherman Anti-Trust Act prior to amendment by Miller-Tydings Act, see 26 Stat. 209 (Act of July 2, 1890, c. 647, § 1).