No. 40,668

QUALITY OIL COMPANY, INC., *Appellant*, v. E. I. DU PONT DE NEMOURS AND COMPANY, INC., *Appellee*.

(322 P. 2d 731)

Opinion filed March 8, 1958.

*L. M. Cornish, Jr.,* of Topeka, argued the cause, and *Ralph F. Glenn,* of Topeka, was with him on the briefs for appellant.

*Charles S. Fisher, Jr.,* of Topeka, argued the cause, and *T. M. Lillard, O. B. Eidson, Philip H. Lewis, James W. Porter, E. Gene McKinney* and *William R. Stewart,* all of Topeka, and *Walter D. Ford* of Wilmington, Delaware, were with him on the briefs for appellee.

*David H. Fisher* and *Donald Patterson,* of Topeka, were on the briefs *amicus curiae* for the Kansas Pharmaceutical Assn.

The opinion of the court was delivered by

FATZER, J.: This was an action for a declaratory judgment that the Kansas Fair Trade Act (G. S. 1949, 50-301-310) is unconstitutional as applied to nonsigners of contracts entered into pursuant to its provisions. An actual controversy existed between the parties, and the action was filed to obtain an early determination of the question since it is of statewide public interest and importance. As G. S. 1949, 50-306 was interpreted by plaintiff, it was entitled to a decree holding the statute unconstitutional for various reasons alleged in the petition; as interpreted by defendant, such a decree was not authorized. The district court agreed with defendant's construction of the statute, and plaintiff has appealed.

The parties stipulated as to the facts, and those here pertinent are summarized: Plaintiff, Quality Oil Company, Inc., a Kansas corporation, is engaged in the retail sale of gasoline, oil and related products, including Zerex antifreeze at Topeka, Kansas, and at various other locations in the state. It purchased a quantity of Zerex antifreeze on the open market and was selling it at retail for $2.25 per gallon. All sales of Zerex at that price were made at a profit.

Defendant is a Delaware corporation authorized to transact business in the state of Kansas. It is engaged in the manufacture and sale of "Zerex" antifreeze sold at retail by plaintiff, and is the owner of registered trade-marks known as "du Pont oval" and "Zerex" which are affixed to containers in which the product is sold and delivered in this state in free and open competition with products of the same general class produced by others. Defendant has expended large sums of money in advertising Zerex and the trade-marks under which it is distributed and sold, and has established a valuable reputation and good will for the product and trade-marks.

Pursuant to G. S. 1949, 50-302 defendant entered into a contract with Harold L. Bailey, operator of Bailey's Conoco, a Topeka service station, whereby the defendant stipulated that Zerex should be sold at the minimum retail price of $3.25 per gallon, and Bailey agreed not to advertise or sell Zerex at retail to any buyer in any state or

political subdivision of the United States in which a fair-trade act or public policy approving resale price maintenance contracts was in effect at less than the retail price stipulated by the defendant. Bailey was authorized to sell Zerex without reference to the contract in the following instances: (a) in closing out in good faith his stock for the purpose of discontinuing the product, or (b) where the product was damaged or deteriorated in quality and notice given to the public. The contract permitted the defendant at any time, upon written notice to Bailey, to amend or supplement the contract by changing any of the stipulated minimum resale prices, or by eliminating any of the commodities listed therein, or by adding other commodities and stipulating minimum resale prices therefor. Bailey agreed not to indirectly reduce the selling price of Zerex below the minimum retail price stipulated by any refund, rebate, concession, prize, etc., either in cash or merchandise. The defendant had similar written contracts with other retail dealers of Zerex in the state of Kansas. However, *plaintiff was not a party to any of such contracts,* but it had notice of their existence and of the minimum price established by them.

On October 17, 1955, defendant informed plaintiff that it had executed fair-trade contracts with customer purchasers of Zerex stipulating that from whomsoever purchased they could not sell Zerex at retail at less than $3.25 per gallon, and that it would constitute actionable unfair competition for it to advertise and sell Zerex at less than the stipulated minimum retail price. The notice was given plaintiff pursuant to G. S. 1949, 50-306, the so-called "non-signer" clause of the act, which makes the stipulated minimum retail price fixed by the defendant in its contracts with Bailey and other retailers in Kansas binding upon all other persons selling Zerex whether or not they are parties to those contracts.

On October 31, 1955, defendant filed an action against plaintiff in the United States District Court for the District of Kansas to enjoin it from selling Zerex at retail for less than the stipulated minimum retail price of $3.25 per gallon, and for damages. Plaintiff, defendant in that action, defended on the ground that the act was unconstitutional. The federal district court issued a temporary restraining order against defendant, plaintiff in this action, and on January 3, 1956, advised counsel for the parties that the proceedings would be stayed pending a determination in a proper state court of the validity of the act.

On January 26, 1956, plaintiff filed this action in the district court of Shawnee County. Issues were formed, and judgment was rendered in favor of the defendant sustaining the act against plaintiff's claim that it violated the Constitution of Kansas for the reasons that (1) it unlawfully delegated legislative power to private persons in violation of Art. 2, § 1; (2) its title was insufficient and violated Art. 2, § 16; (3) it deprived a "nonsigner" of an inalienable natural right and of liberty, property, and equal rights without due process of law; denied equal protection of the law; granted special privileges and immunities in violation of §§ 1, 2 and 18 of the Bill of Rights, and (4) when enacted on March 4, 1937, it was "stillborn" and void *ab initio* and is still invalid because it was not re-enacted.

As preliminary we note that the Miller-Tydings Act ([1937], 15 U. S. C. A. § 1), and the later McGuire Act ([1952], 15 U. S. C. A. § 45) immunized against the effect of the Sherman Act (26 Stat. 209, Ch. 647) banning price-fixing contracts or agreements as restraints of trade in interstate commerce (*Dr. Miles Medical Co. v. Park & Sons Co.*, 220 U. S. 373, 55 L. Ed. 502, 31 S. Ct. 376), and empowered the states to enact fair-trade laws containing nonsigner clauses. We deem it unnecessary to review in detail the history of those congressional acts but suffice it to say those acts, as well as the decisions construing them (*Schwegmann Bros. v. Calvert Corp.*, 341 U. S. 384, 95 L. Ed. 1035, 71 S. Ct. 745, 19 A. L. R. 2d 1119; *Schwegmann Bros. Giant Super Mkts. v. Eli Lilly & Co.*, 205 F. 2d 788, 792, 793; certiorari denied 346 U. S. 856, 98 L. Ed. 369, 74 S. Ct. 71, petition for rehearing denied 346 U. S. 905, 98 L. Ed. 404, 74 S. Ct. 217) clearly demonstrate that the provisions of the Kansas act, including the nonsigner clause, do not conflict with the Sherman Act in any respect, and we conclude the Kansas act was not, as is here urged, invalid and void *ab initio* when enacted in 1937, and it was not necessary to re-enact it after the passage of the McGuire Act, *supra*. (*Schwegmann Bros. Giant Super Mkts. v. Eli Lilly & Co.*, supra; Sutherland, Statutory Construction, 3d Ed. § 2027, p. 501.)

We also note it is conceded by both parties that no federal constitutional question is presented. Indeed, it has been uniformly held that fair-trade acts similar to our own do not violate the due process or the equal protection clause of the Fourteenth Amendment. (*Old Dearborn Co. v. Seagram Corp.*, 299 U. S. 183, 81 L.

Ed. 109, 57 S. Ct. 139; *Schwegmann Bros. Giant Super Mkts. v. Eli Lilly & Co.,* supra; *Seagrams-Distillers Corp. v. New Cut Rate Liquors,* 221 F. 2d 815, certiorari denied sub nomine *New Cut Rate Liquors, Inc., et al v. Seagram Distillers Corp.,* 350 U. S. 828, 100 L. Ed. 740, 76 S. Ct. 59; *Lee-Wilson, Inc. v. General Electric Company,* 222 F. 2d 850, 854; *Sunbeam Corporation v. Masters of Miami,* 225 F. 2d 191, 194.) See, generally, *General Electric Co. v. Kimball Jewelers, Inc.,* 333 Mass. 665, 132 N. E. 2d 652. In view of the foregoing, no question can be raised as to the validity of the Kansas act as it applies to parties actually entering into a voluntary contract pursuant to G. S. 1949, 50-302. Thus, our discussion is limited solely to whether the Kansas act, as it applies to nonsigners of contracts entered into pursuant to its provisions, is in conflict with the Constitution of Kansas.

The movement in the states to legalize resale price maintenance contracts had its birth in California with the passage of the California Fair Trade Act in 1931 (Cal. Stat. 1931, Ch. 278). As originally enacted it permitted a manufacturer to establish resale prices binding only on retailers who voluntarily entered into a contract with him. The act apparently proved ineffective since it was amended in 1933 to include a "nonsigner" clause which provided that such contract established a minimum resale price upon any person who had knowledge of it. (Cal. Stat. 1933, Ch. 260.) By 1941 forty-five states had adopted the California act or one of substantially the same purport, fifteen of which permitted the fixing of *absolute prices,* and thirty, including Kansas, permitted the fixing of *minimum prices* and used the phrase "free and open competition" while other acts read "fair and open competition." These distinctions, however, are slight and immaterial to the legal question here presented.

Courts of thirty-one states have passed upon the validity of the nonsigner clause—sixteen held it unconstitutional and void; fifteen sustained it. No extensive review of those many decisions will be made, but we note the trend of recent cases is to strike down the nonsigner clause. Since the decision in the influential case of *Schwegmann Bros. v. Calvert Corp.,* supra, on May 21, 1951, of the courts of last resort of thirteen states considering the question *for the first time,* eleven declared the nonsigner clause to be in violation of their respective constitutions while only two upheld it. This decided trend of judicial authority, while persuasive, does

not necessarily control the decision of this court since those decisions interpreted constitutional provisions unlike our own. In the final analysis, this court is the sole arbiter of the question whether an act of the legislature is invalid under the Constitution of Kansas. Where this is the only question, federal decisions are persuasive, but not controlling precedents. It is only where a federal question is presented that federal decisions control (11 Am. Jur., Constitutional Law, § 103, pp. 739, 740). As has been noted, no such question arises with respect to the validity of the nonsigner clause.

We turn now to the Kansas act which became effective March 4, 1937, (L. 1937, Ch. 165, §§ 1-10) containing the same or similar provisions as fair-trade acts of other states. The act has two principal provisions: (1) a *voluntary contract* clause (G. S. 1949, 50-302) which provides in effect that a contract between an owner of a trade-mark, branded or named commodity, and one or more retailers shall not be invalid by reason of a stipulated minimum resale price, and (2) a *"nonsigner"* clause (G. S. 1949, 50-306) which makes the stipulated minimum resale price binding upon all persons who have notice of it, whether or not they are parties to the contract.

The pertinent language of the sections above referred to, material to our discussion, is quoted below. (All reference to the act is directed to G. S. 1949 unless otherwise noted.)

"50-302. No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the registered trade-mark, brand, or name of the producer or distributor of such commodity and which commodity is in free and open competition with commodities of the same general class produced or distributed by others shall be deemed in violation of any law of the state of Kansas by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity at less than the minimum price stipulated by the seller."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"50-306. Willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this act, *whether the person so advertising, offering for sale or selling is or is not a party to such contract,* is unfair competition and is actionable at the suit of any person damaged thereby." (Emphasis supplied.)

The declared purpose of the act is to protect registered trade-mark owners, producers, distributors and the general public against injurious and uneconomic practices through the use of voluntary contracts establishing minimum resale prices. To carry out that

purpose, the legislature authorized the owner of a trade-mark commodity to "contract" with a retailer that he would not sell the commodity "at less than the minimum price stipulated" by the owner of the trade-mark. But, the legislature went further. It not only permits such owner to make a "contract" with one or more retailers, such as Bailey, fixing a minimum resale price, but once such a price-fixing contract becomes known to a seller, such as the plaintiff, the act condemns as unfair competition a resale at less than the price stipulated even though the seller is not a party to the contract. In other words, the act permits enforcement of price fixing not only against parties to a "contract" but also against nonsigners. Thus, so far as the act is concerned, price fixing can be enforced against all retailers of the trade-mark commodity once any single retailer agrees with the owner or his authorized distributor on the resale price. The essence of retail price maintenance is control of price competition, and the backbone of the act is the nonsigner clause without which the law is ineffective to maintain retail prices. Illustrative in the instant case, there is nothing in the defendant's price-fixing contract with Bailey binding upon the plaintiff; it is solely the nonsigner clause which permits enforcement of the fixed resale price. As a result, all nonsigner retailers of the trade-mark commodity are forced into line. This is statutory price fixing by compulsion. (*Schwegmann Bros. v. Calvert Corp.*, 341 U. S. 384, 95 L. Ed. 1035, 71 S. Ct. 745, 19 A. L. R. 2d 1119; *Union Carbide and Carbon Corp. v. White River Distributors, Inc.*, 224 Ark. 558, 562, 275 S. W. 2d 455; *Olin Mathieson Corp. v. Francis*, 134 Colo. 160, 301 P. 2d 139; *General Electric Co. v. Wahle*, 207 Ore. 302, 296 P. 2d 635; *Calvert Distillers Corp. v. Sachs*, 234 Minn. 303, 48 N. W. 2d 531; *Dr. G. H. Tichenor A. Co. v. Schwegmann Bros. G. S. Mkts.*, 231 La. 51, 90 So. 2d 343; *Bissell Carpet Sweeper Company v. Shane Co.*, ____ Ind. ____, 143 N. E. 2d 415; *McGraw Electric Co. v. Lewis & Smith Drug Co. Inc.*, 159 Nebr. 703, 68 N. W. 2d 608; *Carbon Corp. v. Bargain Fair*, 167 O. S. 182, 147 N. E. 2d 481).

In *Schwegmann Bros. v. Calvert Corp.*, supra, the Supreme Court of the United States characterized fair-trade acts as price fixing laws in the following language:

". . . If a distributor and one or more retailers want to agree, combine, or conspire to fix a minimum price, they can do so if state law permits. Their contract, combination, or conspiracy—hitherto illegal—is made lawful. They can fix minimum prices pursuant to their contract or agreement with impunity.

When they seek, however, to impose price fixing on persons who have not contracted or agreed to the scheme, the situation is vastly different. That is not price fixing by contract or agreement; that is price fixing by compulsion. That is not following the path of consensual agreement; that is resort to coercion." (p. 388.)

It is asserted the act is an unlawful delegation of legislative power to private persons to fix minimum retail prices binding upon parties having no contractual privity or relation to them in violation of Art. 2, § 1 of the Constitution of Kansas, which provides, "The legislative power of this state shall be vested in a house of representatives and senate." In considering the contention, we are cognizant of the rule that the constitutionality of a statute is presumed and that all doubt must be resolved in favor of its legality and before the statute may be stricken down it must clearly appear it violates the Constitution (*State, ex rel., v. Fadely,* 180 Kan. 652, 659, 308 P. 2d 537, and cases cited therein). Furthermore, this court may not substitute its judgment for that of the legislature as to whether price fixing is good or bad for the economic life of the state, nor do we enter the argument of economics and decide in the light of present-day conditions for or against the wisdom of fair-trade legislation. Whether social and economic conditions have been bettered by an enactment of the law is not a judicial question. The question is whether the statute is embraced within the legislature's constitutional power to enact laws (*Topeka Laundry Co. v. Court of Industrial Relations,* 119 Kan. 12, 16, 237 Pac. 1041; *State v. Wilson,* 101 Kan. 789, 799, 168 Pac. 679; *Associated Dairies v. Fletcher,* 143 Kan. 561, 565, 56 P. 2d 106).

Assuming, but in no sense deciding, that in the exercise of the police power the legislature itself might fix minimum resale prices of trade-mark commodities, we conclude the nonsigner clause of the Fair Trade Act is an unconstitutional attempt to delegate legislative power to private persons in violation of Art. 2, § 1 of the Kansas Constitution. The statute, beyond permitting voluntary contracts or agreements between a trade-mark owner and a retailer to fix a minimum resale price binding upon the signing retailer, gives legislative sanction to the trade-mark owner to fix minimum resale prices binding upon nonsigners.

The power to fix rates or prices for the sale of services or commodities binding upon all parties whether or not they consent is a legislative power (*The State v. Railway Co.,* 76 Kan. 467, 476, 92 Pac. 606; *State, ex rel., v. Flannelly,* 96 Kan. 372, 382, 152 Pac. 22;

*Aetna Ins. Co. v. Travis*, 130 Kan. 2, 4, 285 Pac. 522; *Holton Creamery Co. v. Brown*, 141 Kan. 830, 833, 44 P. 2d 262; *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 169 Kan. 722, 222 P. 2d 704), and the legislature may not abdicate its function and delegate that power to a governmental agency, official, board, or to a private organization or person. (*State v. Crawford*, 104 Kan. 141, 143, 177 Pac. 360; *State, ex rel. v. School District*, 140 Kan. 171, 34 P. 2d 102; *Oakland State Bank v. Bolin*, 141 Kan. 126, 40 P. 2d 437; *Brown v. Illinois Bankers Life Assur. Co.*, 144 Kan. 670, 63 P. 2d 165; *State, ex rel., v. Hines*, 163 Kan. 300, 182 P. 2d 865.)

The act authorizes trade-mark owners to fix prices which are automatically imposed upon nonsigners with notice and condemns as unfair competition a resale at less than the price stipulated. The fixing of minimum prices is the exercise of legislative power since it prescribes a rule governing conduct for the future which is binding upon those who do not consent. A trade-mark owner is thus empowered to determine whether the provisions of the law, *i. e.*, the nonsigner clause, shall be placed into operation, and, if placed into operation, to what commodities it shall apply and what minimum prices it shall make binding on nonsigning parties, and is also empowered to amend or alter the operation of the law by changing minimum prices, by eliminating or adding commodities, and fixing minimum prices for those added. In short, the trade-mark owner is privileged to place the law into effect, and to amend or alter it at his whim or caprice. (*Olin Mathieson Corp. v. Francis*, supra; *General Electric Co. v. Wahle*, supra; *Dr. G. H. Tichenor A. Co. v. Schwegmann Bros. G. S. Mkts.*, supra; *Bissell Carpet Sweeper Company v. Shane Co.*, supra; *McGraw Electric Co. v. Lewis & Smith Drug Co.*, supra; *Liquor Store v. Continental Distilling Corp.* [Fla. 1949], 40 So. 2d 371.) This is "delegation running riot," quoting Mr. Justice Cardozo's description of the N. R. A. codes in a concurring opinion in *Schechter Corp v. United States*, 295 U. S. 495, 79 L. Ed. 1570, 55 S. Ct. 837. The legislature is powerless to clothe a private person with power to fix minimum resale prices, binding upon all who acquire and sell his trade-mark commodity with whom he has no direct contractual relation. An attempt to confer such power is an attempt to delegate legislative power, which is futile. In *General Electric Co. v. Wahle*, supra, the supreme court of Oregon held the nonsigner clause unconstitutional, and declared:

".  .  . By his own act in entering into a contract with a single retailer, the trademark owner may fix the price for all retailers. Without regard to the interests or welfare of the nonsigners, and without their consent, he may change the price at will, or even terminate the contract ending the operation of the statute as to his commodity. It is solely up to him to say whether or not there shall be a law controlling the price at which his article of trade shall be sold. Could there possibly be a more flagrant violation of the constitutional provision respecting the delegation of legislative power than is attempted by the Fair Trade Act? We think not.  .  .  ." (pp. 329, 330.)

In *Olin Mathieson Corp. v. Francis,* supra, the supreme court of Colorado held that the Fair Trade Act, by permitting trade-mark owners to fix prices by contracts with others so as to be binding on nonsigners, was an unconstitutional delegation of legislative power, and said:

".  .  . The device known as the fair trade principle employed in such statutes in the name of protection of the producer's trade-mark and purporting to benefit the public, is designed to serve the manufacturer's interest; is for his own gain and hence an arbitrary and unreasonable regulation of the non-signer's business and a delegation of the legislative power in contravention of the constitution.  .  .  ." (pp. 176, 177.)

In the recent case of *Carbon Corp. v. Bargain Fair,* supra, the supreme court of Ohio in holding the Fair Trade Act unconstitutional as applied to nonsigners of contracts entered into pursuant to its provisions, said:

".  .  . Moreover, it  .  .  . delegates legislative power and discretion to private persons." (p. 186.)

In *Dr. G. H. Tichenor A. Co. v. Schwegmann Bros. G. S. Mkts.,* supra, the supreme court of Louisiana said:

"In the light of the foregoing, it is manifest, if the nonsigner provision of the Louisiana Fair Trade Law sought to be enforced in this case is a price-fixing measure, there is an unlawful delegation of power because it is the manufacturer or producer who fixes the minimum price and not the Legislature itself.  .  .  ." (p. 66.)

We have not overlooked defendant's contention that the act does no more than provide additional protection to the property right and good will of the owner's trade-mark which enables him to designate the minimum price at which commodities bearing his trade-mark or label may be sold, and that when commodities are acquired by nonsigners with knowledge of the minimum price, the purchase carries with it the nonsigners' implied assent thereto, which runs with and conditions the acquisition, relying upon *Old Dearborn Co. v. Seagram Corp.,* 299 U. S. 183, 81 L. Ed. 109, 57 S. Ct.,

139; *General Electric Co. v. Kimball Jewelers, Inc.,* 333 Mass. 665, 132 N. E. 2d 652; *Burche Co. Aplnt. v. General Elec. Co.,* 382 Pa. 370, 115 A. 2d 361; *Lionel Corp. v. Grayson-Robinson Stores,* 15 N. J. 191, 104 A. 2d 304, and *Weco Products Co. v. Reed Drug Co.,* 225 Wis. 474, 274 N. W. 426. We do not accept the implied-assent theory advanced by the defendant. It is obvious to us that what was described as price fixing by coercion—"whereby recalcitrants are dragged in by the heels and compelled to submit to price fixing" in *Schwegmann Bros. v. Calvert Corp.,* supra, (p. 390) is still compulsory price fixing under any nonsigner clause including 50-306. If additional protection to the property right and good will of the owner's trade-mark is to be given him, it must be accomplished pursuant to the Constitution of Kansas and we have concluded the method here employed attempts to confer that right in violation of Art. 2, § 1 of the Constitution.

We are not here concerned with a statute which places upon an official or board a duty to execute a law made by the legislature, or which fixes a reasonable and fair rate, price or charge for trademark, brand or named commodities and delegates to a governmental agency the power to find as a fact what is fair and reasonable under proper standards and subject to safeguards of procedural due process, nor do we decide the validity of such a statute.

In view of the foregoing we hold that the Fair Trade Act (50-301-310) of this state, as applied to nonsigners of contracts entered into pursuant to its provisions, is unconstitutional and void, being in violation of Art. 2, § 1 of the Constitution of Kansas. Consequently, it is unnecessary that we discuss and decide other questions presented by the parties. The judgment of the district court is reversed with directions to enter judgment for the plaintiff.

It is so ordered.

HALL, J. (dissenting): I dissent from the opinion of the court. I do not believe that G. S. 1949, 50-306 can accurately be described as a grant of legislative price fixing power to private individuals.

Trade-marks, brand names and the goodwill connected with them were recognized, before the advent of fair trade laws, as valuable property rights entitled to protection against those who would impair their value (Lanham Act, 15 U. S. C. A. § 1051 *et seq.*; G. S. 1949, 81-101 *et seq.*). Fair trade legislation was designed to protect the trade-mark owner from impairment of the value of the mark and goodwill from unscrupulous retail competition.

The soundness of this protection with its resulting retail price maintenance is not a subject of universal agreement. It has been vigorously debated by the Congress and state legislatures. There are those who maintain that such resale price maintenance is beneficial to manufacturers, retailers and consumers; there are those who assert it is unsound. (See, generally, *General Electric Co. v. Klein*, Del., 106 A. 2d 206, and authorities cited therein.)

As is stated by the majority opinion, it is not the province of this court to pass upon the wisdom of the Fair Trade Law or to assemble and comment upon the conflicting arguments. Where the questions of fact are fairly debatable, this court cannot substitute its judgment for that of the legislature, but must accept and carry into effect its declared policy. (*State, ex rel., v. Sage Stores Co.,* 157 Kan. 404, 141 P. 2d 655; *Denton v. West,* 156 Kan. 186, 131 P. 2d 886; *Hunt v. Eddy,* 150 Kan. 1, 90 P. 2d 747; *Smith v. Fuest,* 125 Kan. 341, 263 Pac. 1069.)

Following this premise, I cannot agree that the Fair Trade Law constitutes an unlawful delegation of power to the owner of the trade-mark or brand. Trade-mark ownership is a property right distinct from ownership of goods and title to the trade-mark does not pass by sale of the product. The nonsigner clause of the Law does not place a restriction upon the sale of a commodity as such, but imposes a restriction because the commodity is identified by the trade-mark, brand or name of the producer or owner. Retailers may sell these products at any price they choose if they remove or obliterate the distinguishing trade-mark or brand name (G. S. 1949, 50-305 [b]). The manufacturer's power to set prices is merely a means of effectuating the legislative policy of protecting the value and goodwill of the owner's trade-mark, ownership of which is, at all times, in him. The price-fixing effect is simply a method by which the owner of the trade-mark can protect his property interest in the mark. The majority opinion can be sustained only if it is assumed that the retailer has the right to use the trade-mark as he chooses, contrary to the legislative judgment that unrestrained price cutting impairs the value of the mark. In *Old Dearborn Co. v. Seagram Corp.,* 299 U. S. 183, 81 L. Ed. 109, 57 S. Ct. 139, the Supreme Court of the United States characterized this as follows:

". . . The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trade-mark, brand or name in accomplishing such disposition. The primary aim of the

law is to protect the property—namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself." (p. 193.)

The grant of power to the trade-mark owner grows out of a basic property right. This power is not unregulated. Fair trading is allowed only where the fair-traded commodity "is in free and open competition with commodities of the same general class produced or distributed by others" (G. S. 1949, 50-302). Thus the manufacturer's prices are fixed by competition with other commodities and not by his arbitrary whim or caprice (Concurring opinion, *Shakespeare Co. v. Sporting Goods Co.,* 334 Mich. 109, 120, 54 N. W. 2d 268; Adams, Resale Price Maintenance: Fact and Fancy, 64 Yale L. J. 967, 972 [June, 1955]).

Finally it must be noted that fair trade laws have been held constitutional by the highest courts of a number of jurisdictions, including those which have considered the matter recently. (*Scovill Mfg. Co. v. Skaggs Etc. Drug Stores,* 45 C. 2d 881, 291 P. 2d 936; *Burroughs Wellcome & Co. v. Johnson Wholesale Perfume Co.,* 128 Conn. 596, 24 A. 2d 841; *General Electric Co. v. Klein,* supra; *Home Utilities Co. v. Revere,* 209 Md. 610, 122 A. 2d 109; *General Electric Co. v. Kimball Jewelers, Inc.,* 333 Mass. 665, 132 N. E. 2d 652; *W. A. Sheaffer Pen Co. v. Barrett, et al.,* 209 Miss. 1, 45 So. 2d 838; *Lionel Corp. v. Grayson-Robinson Stores,* 15 N. J. 191, 104 A. 2d 304; *General Elec. Co. v. Masters, Inc.,* 307 N. Y. 229, 120 N. E. 2d 802; *Lilly & Co. v. Saunders,* 216 N. C. 163, 4 S. E. 2d 528; *Burche Co., Aplnt. v. General Elec. Co.,* 382 Pa. 370, 115 A. 2d 361; *Miles Lab., Inc. v. Owl Drug Co.,* 67 S. D. 523, 295 N. W. 292; *Seagram Distillers v. Corenswet,* 198 Tenn. 644, 281 S. W. 2d 657; *Sears v. Western Thrift Stores,* 10 Wn. 2d 372, 116 P. 2d 756; *Bulova Watch Co. v. Anderson,* 270 Wis. 21, 70 N. W. 2d 243.)

I would hold that the Kansas Fair Trade Act is fully valid and enforceable and would affirm the judgment of the district court.